IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES of AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| TEDDY YOUNG, et al. | : | No. 05-56 |

**MEMORANDUM**

**STENGEL, J.**                                                                              August 9, 2006

Currently before the court is defendant William McCoy's motion to dismiss the indictment. For the reasons set forth below, I will deny that motion.

**I.     BACKGROUND**

This case involves an FBI wiretap on the cellular telephone of defendant Theodore Young, Jr. ("Young"). The wiretap occurred from September 7, 2001, to June 8, 2002. All eighteen (18) defendants currently implicated in this case were intercepted in the wiretap and charged in a federal indictment for being members and participants in the Young Heroin Organization ("YHO").[1] As detailed in the indictment, all of the charged defendants engaged in discussions concerning the distribution of controlled substances. In particular, the indictment alleges that defendant McCoy received processed, packaged, and stamped heroin from Young and distributed the heroin by selling it on the streets. In

---

[1] Although the original indictment named nineteen (19) defendants, the nineteenth defendant, Mr. Frank Robinson, was dismissed shortly after his death.

exchange for reselling the packaged heroin, McCoy allegedly received a portion of the proceeds obtained from the sale of the heroin with the remainder going to Young.

## II.     DISCUSSION

McCoy's contends that the indictment is fatally flawed because it:  (1) improperly alleges a single conspiracy rather than multiple conspiracies; (2) the conspiracy count fails to set forth an illegal agreement and is, therefore, insufficient; and (3) the evidence before the grand jury regarding the telephone count was insufficient.  All three arguments are without merit.

### A.     **The Indictment Properly Alleges a Single Conspiracy**

As the Third Circuit stated in United States v. Boyd:

> The gist of a criminal conspiracy, the agreement between co-conspirators, may continue over an extended period of time and involve numerous transactions.  Parties may join the conspiracy after its inception, and may withdraw and terminate their relationship with the conspiracy prior to its completion. . . . The fact that conspirators individually or in groups perform different tasks in pursuing the common goal does not, by itself, necessitate a finding of several distinct conspiracies. . . . And even if a small group of co-conspirators are at the heart of an unlawful agreement, others who knowingly participate with the core members and others to achieve a common goal may be members of a single conspiracy. . . . It follows from these basic principles that the government, without committing a variance between a single conspiracy charged in an indictment and its proof at trial, may establish the existence of a continuing core conspiracy which attracts different members at different times and which

> involves different sub-groups committing acts in furtherance of the overall plan.

United States v. Boyd, 595 F.2d 120, 123 (3d Cir. 1978) (internal citations omitted). Furthermore, in United States v. Kelly, 892 F.2d 255 (3d Cir. 1989), the Third Circuit established a three-step inquiry "[t]o determine whether a series of events constitutes a single conspiracy or separate, unrelated conspiracies." Kelly, 892 F.2d at 259. This inquiry requires: (1) determining whether there was a common goal among the conspirators; (2) examining the nature of the scheme and determining whether the agreement sought to bring about a continuous result which could not be sustained without the continued cooperation of the conspirators; and (3) examining the extent to which the participants overlapped in various dealings. Id. But see United States v. Padilla, 982 F.2d 110, 115 (3d Cir. 1992) ("we note that the Kelly factors are most useful to show the existence of a single conspiracy, but that the absence of one factor does not necessarily defeat an inference of the existence of a single conspiracy").

In this case, the grand jury returned an indictment charging a violation of 21 U.S.C. § 846, laying out the basis for the single conspiracy, and further listing overt acts committed by the defendants. In particular the indictment alleges that the YHO made a highly coordinated and organized effort to supply heroin to the city of Philadelphia. Young, as the leader of the organization, used and employed cuthouse workers and several re-sellers to distribute the heroin throughout Philadelphia. The cuthouse workers would "cut" the heroin by mixing it with another substance and then package the "cut"

heroin for distribution.  The heroin would then be sold on the streets by re-sellers, like McCoy.  Furthermore, the indictment alleges that there was a unity of purpose to distribute the heroin rather than a random group of networks operating independently of each other.  This factual particularity within the indictment is more than sufficient to survive a motion to dismiss.  See <u>United States v. Watkins</u>, No. 03-cr-309, 2005 U.S. Dist. LEXIS 32583 (E.D. Pa. Dec. 13, 2005) (denying motion to dismiss indictment on variance grounds prior to trial).

### B. The Conspiracy Count Sufficiently Sets Forth an Illegal Agreement

McCoy alleges that the indictment fails to properly allege an illegal agreement between the defendants as a matter of law.  The indictment states in pertinent part:

> [the defendants] conspired and agreed together and with others known and unknown to the grand jury, to
>
> a) knowingly and intentionally distribute in excess of 1 kilogram of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and;
>
> b) knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), within 1,000 feet of the real property comprising the J.B. Kelly School, a public elementary school, located at the intersection of Hansburry Street and Pulaski Avenue in Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 860(a).

Consequently, an illegal agreement to distribute heroin, and to do so within a statutorily protected area, is properly alleged. See United States v. Niederberger, 580 F.2d 63, 68 (3d Cir. 1978) (finding it is well settled law that a statute describing a criminal offense disjunctively may be charged conjunctively in an indictment).

### C.     The Evidence was Sufficient as to the Telephone Count

Generally, challenges to the sufficiency of the evidence presented to the grand jury after an indictment has been returned are improper. Costello v. United States, 350 U.S. 359, 363 (1956). In this case, McCoy's contentions that there was insufficient evidence before the grand jury is conclusionary and without merit. The grand jury returned a properly pled indictment, and the government fully intends to prove the allegations contained in the indictment at trial. There is no reason to dismiss the indictment for insufficient evidence at this time.

## III.   CONCLUSION

McCoy's motion fails to provide this court with any valid reason to dismiss the indictment. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES of AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **TEDDY YOUNG, et al.** | : | No. 05-56 |
| | : | |
| | : | |

**ORDER**

**AND NOW**, this 9th day of August, 2006, upon consideration of defendant William McCoy's Motion to Dismiss the Indictment and Other Relief (Docket # 313), and the government's response thereto, it is hereby **ORDERED** that the motion is **DENIED**.

BY THE COURT:


 s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.